UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JOHNNIE COOK #270691,

        Plaintiff,        Case No. 2:07-cv-162

v.        Honorable R. Allan Edgar

UNKNOWN LAPONSIE, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On October 22, 2007, this Court issued an opinion and order partially dismissing Plaintiff's complaint and serving his claims against Defendant LaPonsie. On February 22, 2008, Defendant LaPonsie filed a motion for summary judgment (docket #18) on the ground that Plaintiff failed to exhaust his available administrative remedies. Defendant LaPonsie filed a second motion for summary judgment (docket #21) on February 22, 2008, which addresses the merits of Plaintiff's claims. Plaintiff filed a response (docket #26) and brief (docket #27) on or about March 10, 2008, and Defendant filed a reply (docket #29) and brief (docket #30) on March 24, 2008.

**Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which the defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth

Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Facts

Plaintiff is presently incarcerated at St. Louis Correctional Facility. In his *pro se* complaint, Plaintiff complains of events that occurred while he was housed at the Kinross Correctional Facility (KCF). Plaintiff alleges that on August 23, 2006, he was in the unit mop closet, admittedly placing telephone calls in violation of MDOC rules. RUO LaPonsie purposely kicked the closet door open, hitting Plaintiff on his left side. A medical examination conducted one week later revealed bruising on Plaintiff's right hip and tenderness with palpitation of his right ribs. After Plaintiff filed a grievance regarding the incident, RUO LaPonsie questioned him in a threatening manner, causing Plaintiff to fear future retaliation.

On September 22, 2006, Plaintiff was transferred from KCF, a Level II facility, to a Level I security facility, where he requested a Buddhist diet. Because the Level I facility was not prepared to provide Buddhist meals, Plaintiff was returned to KCF. Plaintiff filed a grievance and wrote letters to Warden Metrish, Assistant Deputy Warden Olson, and Internal Affairs contending that by being in the same facility as RUO LaPonsie, his safety was jeopardized and he feared for his life. On December 12, 2006, RUO LaPonsie informed Plaintiff that he was "walking on thin ice;"

on December 18, 2006, she stated that she had a lot of friends at KCF and that Plaintiff would never know from which direction retaliation would be coming. On February 10, 2006, RUO LaPonsie issued a false "threatening behavior" major misconduct report against Plaintiff. Plaintiff was found guilty and, as a result, spent four months in segregation, was transferred to a Level IV security facilty, and, he believes, will now likely be denied parole.

Plaintiff claims that Defendant LaPonsie violated his Eighth Amendment rights. For relief, he seeks monetary damages for his pain, suffering and loss which flow directly from the assault by RUO Laponsie, and an injunction ordering (1) that the false misconduct report be removed from his record, (2) a transfer to a Level I facility, and (3) placement in the Assaultive Offenders Program.

## Discussion

Defendant LaPonsie claims that she is entitled to summary judgment as to Plaintiff's claims arising after September 5, 2006, because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007);

*Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendant LaPonsie asserts that Plaintiff has filed seven grievances through step III of the grievance process. Defendant LaPonsie attaches a copy of a grievance inquiry (Exhibit A) to her brief, which lists every grievance appealed to step III by Plaintiff. Defendant LaPonsie states that Plaintiff has filed seven grievances through step III and that six of these grievances relate to events at KCF. Defendant LaPonsie attaches a copy of several grievances. In Grievance Number KCF-2006-08-1039-26z, Plaintiff asserts that Defendant LaPonsie approached him in front of his doorway and as Plaintiff was opening the door, she pushed it into Plaintiff, hitting him in the rib cage. Plaintiff further states that Defendant LaPonsie told him that she would have his "head" if he dared to get prisoners to be witnesses against her. (Exhibit B.) In Grievance Number KCF-2006-09-1062-26b, Plaintiff claims that Defendant LaPonsie threatened him on September 5, 2006, by stating "What the fuck do you think you are doing by writing a grievance on me?" Defendant LaPonsie told

6

Plaintiff that something was going to happen to him. (Exhibit C.) In Grievance Number KCF-2006-09-1078-28a, Plaintiff states that Defendant LaPonsie conducted a shakedown on September 2, 2006, in order to harass Plaintiff for filing grievances. This grievance was rejected as duplicative. (Exhibit D.) In Grievance Number KCF-198910-17a, Plaintiff states that Defendant LaPonsie called him an asshole on December 17, 2006. This grievance was rejected as duplicative. (Exhibit E.) In Grievance Number KCF-200343-17a, Plaintiff claimed that he was afraid of being assaulted by Defendant LaPonsie because of her continued threats and harassment. Plaintiff attempted to file this grievance directly to step III. However, this grievance was returned to Plaintiff with instructions to file it at step I. (Exhibit F.) Finally, in Grievance Number KCF-2007-02-254-28e, Plaintiff asserted that staff at KCF were threatening him. This grievance was rejected as untimely. (Exhibit G.)

Defendant LaPonsie notes that Plaintiff attached portions of other grievances to his complaint, but that none of these grievances were properly pursued through step III. According to Defendant LaPonsie, these grievances include Grievance Numbers KCF-2006-11-1377-24z, KCF-06-12-1422-17a, and KCF-06-12-1475-28a. (Attachments D, I, and J to Plaintiff's complaint.) These grievances relate to the December 10, 2006, and December 18, 2006, threats by Defendant LaPonsie. Defendant LaPonsie contends that because Plaintiff did not properly appeal these grievances, these claims have not been properly exhausted. Plaintiff fails to respond to this assertion, other than to say that prison officials were made aware of these claims, so that he should be allowed to pursue them in the course of this action. However, as noted above, a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he

7

filed his federal complaint before allowing the administrative process to be completed."). Therefore, the undersigned recommends that Plaintiff's claims regarding the December 10, 2006, and December 18, 2006, incidents be dismissed without prejudice for failure to exhaust administrative remedies.

Based on the grievances listed above, Defendant LaPonsie states that it appears that Plaintiff has exhausted his claims with respect to the alleged assault on August 23, 2006, and the threat on September 5, 2006. However, Defendant LaPonsie asserts that in step I of Grievance Number KCF-2006-09-1078-28a, Plaintiff appears to be claiming that he was assaulted with his cell door, but in the complaint Plaintiff claims that he was assaulted with the door of the mop closet. Therefore, it appears that the grievance is in reference to an entirely different incident. In Plaintiff's response to the motions for summary judgment, he states that he cannot read or write and had to find another prisoner to write his grievance for him. Plaintiff states that the writer apparently made a mistake when writing the facts of the incident on the grievance. The undersigned notes that the grievance lists the same date as that in the complaint and the allegations are otherwise identical. Therefore, the undersigned concludes that Plaintiff properly grieved the alleged assault with a door, as well as the September 5, 2006, threat by Defendant LaPonsie.

In Defendant LaPonsie's brief in support of the second motion for summary judgment (docket #22), she contends that she is entitled to summary judgment on Plaintiff's excessive force claim. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of

confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis). Federal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases). The same hold true even when the push or shove appears to be unnecessary. *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996).

Initially, Defendant LaPonsie states that on the date of the alleged assault, August 23, 2006, she was not working. However, on August 25, 2006, an incident with a door did happen. Specifically, Defendant LaPonsie states that Plaintiff refused a direct order to close his door, and Defendant LaPonsie had to close it. At the misconduct hearing, Plaintiff admitted to disobeying the order and failed to state that he had been hit by a door. In support of these assertions, Defendant LaPonsie offers her affidavit and time sheet, as well as a copy of the misconduct report and the hearing on the charge as exhibits to her brief. (Exhibits A and B.) Defendant LaPonsie's time sheet indicates that August 23, 2006, was her regular day off and that she worked "0" hours. (Exhibit A, p. 4.) At the major misconduct hearing relating to the August 25, 2006, incident, the hearing officer found:

> Prisoner Cook was given a direct and reasonable order on 8-25-06 at 2150 hrs by the reporting officer. The order was close your door. Prisoner Cook heard and understood the order because he stated, you want the door closed, close it yourself. Prisoner Cook voluntarily failed to follow the order and did not close the door. The charge is upheld.

(Exhibit B, p. 1.)

In response to Defendant LaPonsie's assertions on this incident, Plaintiff states that the correct date of the incident may have "gotten lost during the translation of the facts to the person he found to assist him with his grievances." In addition, Plaintiff asserts that the time sheet has discrepancies, but fails to specify what those discrepancies might be. Plaintiff states that he was injured as a result of Defendant LaPonsie's conduct, regardless of whether the date was August 23 or August 25. In reviewing the record, the undersigned notes that Defendant LaPonsie attaches a copy of Plaintiff's physical exam record dated August 30, 2006, and conducted by Linda D.

Ouellette, R.N., to the brief in support of the first motion for summary judgment. (Exhibit B, pp. 3-4.) Nurse Ouellette notes that Plaintiff was complaining of being hit by a door the previous week, which caught him in the left rib cage and hip area. Plaintiff stated that he was experiencing pain upon deep breathing and coughing. In the course of her exam, Nurse Ouellette made the following finding:

> Comments regarding objective findings: rigth [sic] side of ribs tender with palpation, no swelling or bruising does have a bruising on rigth [sic] hip area from door knob

(Exhibit B, p. 2.)

Assuming that Plaintiff exhausted his claim that he was "assaulted" by a door on August 25, 2006, the undersigned concludes that the alleged force, and the resulting injury were de minimis. Thus, Plaintiff's allegation that Defendant LaPonsie hit him with a door does not rise to the level of a constitutional deprivation. Accordingly, the undersigned recommends that Defendant LaPonsie be granted summary judgment on this claim.

Defendant LaPonsie also contends that she is entitled to summary judgment on Plaintiff's retaliation claim regarding the alleged threat on September 5, 2006. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

11

retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As noted above, Plaintiff claims that on September 5, 2006, Defendant LaPonsie stated, "What the fuck do you think you are doing by writing a grievance on me?" Defendant states that this by itself is not sufficient to state a retaliation claim. Plaintiff fails to state any further harm that he suffered in relation to this claim. Therefore, the undersigned recommends that Defendant LaPonsie be granted summary judgment on Plaintiff's retaliation claim.

Finally, the undersigned notes that Plaintiff's claim that his major misconduct conviction was retaliatory is without merit. The Supreme Court has held that a claim for equitable relief and monetary damages that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005). Thus, where a prisoner's claim of unfair procedures in a

disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges), *cert. denied*, 122 S. Ct. 1795 (2002). *See also Muhammad v. Close*, 540 U.S. 749 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Misconduct Report is received. MICH. COMP. LAWS § 791.254; Policy Directive 03.03.105, ¶ DDD. Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH.

COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[2] Accordingly, because Plaintiff has not shown that his conviction has been invalidated, his claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, No. 02-2460, 2004 WL 1326066 (6th Cir. June 10, 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, No. 03-1411, 2003 WL 22976618 (6th Cir. Dec. 8, 2003) (same); *Harris v. Truesdell*, No. 03-1440, 2003 WL 22435646 (6th Cir. Oct. 23, 2003) (*Heck*-barred claim fails to state a claim and is frivolous).

### Recommended Disposition

For the foregoing reasons, I recommend that Defendant LaPonsie's motion for summary judgment (docket #18) be granted with regard to Plaintiff's claims that he was threatened on December 10 and December 18, 2006, and denied with regard to the remaining claims. However, the undersigned further recommends that Defendant's second motion for summary judgment (docket #21) be granted, and Plaintiff's complaint be dismissed in its entirety.


    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 27, 2008

---

[2] A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened prison sentence" is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).